UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROGER SHONOWSKY,

        Plaintiff,

  v.              3:10-cv-745

CITY OF NORWICH, et al.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Roger Shonowsky commenced the instant action pursuant to 42 U.S.C. § 1983 arising out of his arrest and confinement in an inpatient psychiatric facility. Plaintiff also asserts various common law claims. Presently before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12 on the ground that the instant action is untimely.

**I. FACTS**

The Complaint alleges that "[o]n or about June 29, 2007 the persons treating Roger Shonowsky requested that the Norwich police escort Roger Shonowsky to an inpatient facility for evaluation and treatment." Compl. at ¶ 7.[1] The police located Shonowsky at the YMCA. "The police proceeded to arrest Roger Shonowsky causing him physical injury." Id. at ¶ 9. It

---

[1] According to the police incident report, a nurse practitioner at the mental health clinic kicked Plaintiff out of her office because Plaintiff had threatened her. The clinic requested that Plaintiff be picked up and taken to the hospital. The clinic was preparing papers pursuant to N.Y. Mental Hygiene Law § 9.45 (permitting removal to a hospital of any person that has a mental illness for which immediate care and treatment in a hospital is appropriate and where serious harm to himself or others is likely to result). The police located Plaintiff at the YMCA where it is claimed that the officers struggled with Plaintiff in the locker room. The incident report states that Plaintiff struck at least one of the officers. As a result of the struggle, Plaintiff sustained a laceration to his eye.

is claimed that "[t]here was no basis for an arrest" as "[t]his was a routine pick up of a non violent mental health patient for examination and treatment." Id. at ¶¶ 18-19.

## II.   DISCUSSION[2]

Defendant moves to dismiss on the ground that all claims are time-barred. Plaintiff concedes that his state law causes of action are time-barred. Accordingly, those claims are dismissed. See Pl's Mem. of Law at 2; Woodruff Aff. at ¶¶ 29, 31. That leaves the issue of whether the § 1983 claims were timely commenced. Defendant contends that the § 1983 claims are time-barred because the instant action was commenced more than three years after the June 18, 2007 arrest.[3] Plaintiff responds that the statute of limitations must be tolled for ten days pursuant to N.Y.C.P.L.R. § 208. Because Defendant has demonstrated that, on its face, the claim is barred by the statute of limitations, Plaintiff has the burden of proof to demonstrate the applicability of § 208. Vallen v. Carrol, 2005 WL 2296620, at *3 (S.D.N.Y. 2005); see also Doe v. Hole See, 17 A.D.3d 793, 794 (3d Dept. 2005) (and cases cited therein).

Section 208 tolls the statute of limitations for individuals suffering from "insanity at the time the cause of action accrues." N.Y.C.P.L.R. § 208. The New York Court of Appeals has instructed that § 208 be "narrowly interpreted." McCarthy v. Volkswagen of Am., 55 N.Y.2d 543, 548 (1982). For § 208 to apply, there must be evidence that Plaintiff was unable

---

[2] Plaintiff's papers fail to comply with N.D.N.Y.L.R. 10.1. Among other things, that Rule requires that all documents be double-spaced and that all pages be consecutively numbered. The Rule warns that "[t]he Court may reject documents that do not comply with the above-listed requirements." **Counsel is cautioned that the future failure to comply with these rules will result in the rejection of documents**.

[3] Although the Complaint alleges that the arrest occurred on or about June 29, 2007, Plaintiff concedes that the proper date is June 18, 2007.

to protect his legal rights because of an overall inability to function in society.  McCarthy, 55 N.Y.2d at 548-49; Barnes v. Onondaga County, 65 N.Y.2d 664 (1985).  "[T]he condition of an individual's mental capabilities is largely a factual question."  McCarthy, 55 N.Y.2d at 548. "[T]he task is a pragmatic one, which necessarily involves consideration of all surrounding facts and circumstances relevant to the claimant's ability to safeguard his or her legal rights." Cerami v. City of Rochester Sch. Dist., 82 N.Y.2d 809, 812 (1993).  "Apathy, depression, posttraumatic neurosis, psychological trauma and repression therefrom, or mental illness alone are insufficient to invoke the tolling provisions of § 208; the mental disability must be severe and incapacitating."  McEachin v. City of New York, 2007 WL 952065, at *4 (E.D.N.Y. 2007) (internal quotations and citation omitted).  "Thus, an allegation that plaintiff was mentally ill at the time of the alleged assault is not enough to trigger § 208."  Murphy v. West, 533 F. Supp.2d 312, 316 (W.D.N.Y. 2008).  "Difficulty in functioning is not sufficient to establish insanity for purposes of § 208; rather, the plaintiff must be totally unable to function as a result of a 'severe and incapacitating' disability."  Swartz v. Berkshire Life Ins. Co., 2000 WL 1448627, at *5 (S.D.N.Y. 2000) (quoting Dumas v. The Agency for Child Development-New York City Head Start, 569 F. Supp. 831, 833 (S.D.N.Y. 1983)).  "New York law does not unequivocally apply a *per se* toll for psychiatric hospitalization."  Joseph S. v. Hogan, 561 F. Supp.2d 280, 315 (E.D.N.Y. 2008).  "[T]he plaintiff must also satisfy the 'continuous disability' requirement, which requires a showing that 'the disability of insanity was continuous during the relevant period.'"  Basher v. Madonna Realty Corp., 2007 WL 174130, at *3 (E.D.N.Y. 2007) (quoting Carter v. Doe, 2006 WL 2109461, at *3 (S.D.N.Y. 2006)).  Under this continuity requirement, a lucid interval of any significant duration stops the toll.  Id.

Here, Plaintiff alleges that he was involuntarily committed from June 18 through June 29, 2007. In his affidavit, he states that he "was locked in the facility, without a phone or contact with the outside world. I was unable to call an attorney and I an [sic] unable to fill out the forms to file a notice of claim or a complaint." He further states that he was incapable of protecting his legal rights when the cause of action accrued because he was unable to function in society "due to being physically locked up in the psychiatric ward and unable to consult an attorney due to my insanity."

The medical evidence before the Court[4] demonstrates that Plaintiff has been diagnosed with bipolar disorder and has a history of mental illness and multiple psychiatric admissions. Plaintiff was admitted to Binghamton General Hospital on June 18, 2007 the date of the subject incident. A psychiatric assessment of Plaintiff on or about June 20, 2007 notes that Plaintiff:

> appears somewhat grandiose and having a somewhat increase psychomotor activity. His speech is marginally increased in rate and slightly pressured. He is cooperative with interviewer. Mood is euphoric. His affect is congruent to the mood. The patient is having some circumstantiality, flight of ideas and he is somewhat tangential at times. He denies any racing thoughts, no loosening of associations. No thought blocking. . . . Attention, concentration, memory are grossly fair. Insight and judgment are guarded.

The psychiatric assessment assigned a diagnoses of "bipolar disorder, mixed" and a global assessment of function of 35.[5]

The medical record indicates that, upon discharge on June 29, 2007, Plaintiff was:

---

[4] Plaintiff submitted medical records in opposition to Defendant's motion and in support of his contention that he is entitled to the insanity toll.

[5] A GAF of 35 is associated with some impairment in reality testing or communication or major impairment in several areas, such as work, family relations, judgment, thinking or mood.

> awake, alert, [and] oriented times three. The patient appeared to be calm with no grandiosity observed. There was no increased psychomotor activity. Speech was not pressured. The patient was cooperative with interview. His mood was euthymic. Affect was mood congruent. The patient was not having any circumstantiality. No flight of ideas. He denied any racing thoughts. No loosening of associations or thought blocking. He denied any psychosis. His attention, concentration, and memory were grossly fair. Insight and judgment were intact.

The discharge summary noted a diagnosis of "bipolar disorder, mixed" and found Plaintiff to have a general assessment of functioning of 58-60.[6] The discharge summary further noted that "[t]he patient is going to be discharged back to his house."

As previously noted, the fact that Plaintiff was involuntarily committed to the hospital pursuant to Mental Hygiene Law § 9.45 does not mean that he was unable to protect his legal rights because of an overall inability to function in society. See Hoops v. Director, Bellevue Hosp. Center, 28 Misc.3d 61 (New York County Sup. Ct. App. Term. 2010) (not relying on the fact of the plaintiff's involuntary admission, but looking to the psychiatric records generated during his confinement). Section 9.45 allows for a person to be involuntary placed in a hospital if the person has a mental illness for which immediate care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others. An involuntary placement pursuant to §§ 9.39, 9.40, or 9.45, does not necessitate a finding of insanity as used in § 208.[7] Plaintiff's psychiatric assessment upon

---

[6] A GAF of 51-60 is associated with moderate symptoms or a moderate degree of difficulty in social or occupational functioning. A score of 58-60 is, of course, at the upper end of the moderate level.

[7] Invoking § 9.45 requires reference to §§ 9.39 or 9.40. Both §§ 9.39 and 9.40 allow for involuntary admission upon a finding that a person has "a mental illness for which immediate observation, care and treatment . . . is appropriate and which is likely to result in serious harm to the person or others." See N.Y. Mental Hyg. Law §§ 9.39; 9.40. This does not require any finding that a person is unable to care for himself or otherwise function in society. These provisions should be compared with § 9.27, which allows for an involuntary admission upon the medical certification of two physicians that a person is "mentally ill and in need of involuntary care and treatment." The phrase "in need of involuntary care and treatment" is statutorily defined to mean "that a person has a mental illness for which care and treatment
(continued...)

admission, however, may support such a finding.  Before making a determination whether § 208 applies, the Court will need additional information concerning the specifics of Plaintiff's condition and how his condition affected his ability to function in society on June 18 and the days following thereafter.[8]

### III.     CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED insofar as the state law claims are DISMISSED as untimely.  The Court RESERVES judgment on Defendant's motion to dismiss the § 1983 claim pending a hearing limited to the issue of whether Plaintiff's mental condition warrants relief pursuant to § 208.  This matter is referred to the assigned Magistrate Judge for a hearing on this issue.  The parties shall contact the Chambers of the Assigned Magistrate Judge to arrange a day and time for the hearing.

IT IS SO ORDERED.

Dated: November 4, 2010

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge

---

[7](...continued)
as a patient in a hospital <u>is essential to such person's welfare and whose judgment is so impaired that he is unable to understand the need for such care and treatment</u>." N.Y. Mental Hyg. Law §9.01 (emphasis added).  This definition requires a finding that a person lacks an ability to care for himself.  Sections 9.39, 9.40 and 9.45 require a lesser degree of mental illness than does § 9.27.  Thus, a person admitted pursuant to §§ 9.39, 9.40, and 9.45 is not necessarily "insane" within the meaning of § 208.

[8] The hearing will address whether Plaintiff was insane within the meaning of §208 upon his admission on June 18, 2007 and, if so, how long any such period of insanity persisted.