IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

ROGER SHONOWSKY,

                    Plaintiff,

                                              Civ. Action No.
                                              3:10-CV-0745 (TJM/DEP)

        v.


CITY OF NORWICH, *et al.*,

                    Defendants.

─────────────────────────────────────

<u>APPEARANCES</u>:                      <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>:

CARROLL LAW FIRM                  WOODRUFF CARROLL, ESQ.
Galleries of Syracuse, 2nd Floor
441 South Salina Street
Syracuse, New York 13202-0352

<u>FOR DEFENDANTS</u>:

LIPPMAN O'CONNOR                  GERARD O'CONNOR, ESQ.
300 Olympic Towers
300 Pearl Street
Buffalo, New York 14202

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Roger Shonowsky commenced this action against the City of Norwich and two Norwich City police officers asserting claims under 42 U.S.C. § 1983 for unlawful arrest, the use of excessive force, and deprivation of due process, as well as pendent state common law negligence and indemnification causes of action.  Plaintiff's claims arise out of his arrest on June 18, 2007 by the two defendant police officers who, following that arrest, escorted him to an inpatient facility for psychiatric evaluation and treatment.

In response to the complaint defendants moved to dismiss Shonowsky's claims on the basis of the governing statutes of limitations. Addressing that motion, Senior District Judge Thomas J. McAvoy issued a decision dismissing plaintiff's pendent state law claims and referring the matter to me for an evidentiary hearing to determine whether the three-year statute of limitations applicable to plaintiff's federal claims, which absent tolling would result in dismissal of those claims, should be tolled during the period of his involuntary psychiatric commitment.  For the reasons set forth below, based upon the evidence adduced at an evidentiary hearing concerning the matter, I find plaintiff has failed to

establish his entitlement to tolling based upon insanity.

I.    <u>BACKGROUND</u>[1]

Plaintiff was born in 1954.  At the times relevant to his claims he was fifty-two years old and a resident of Chenango County, New York.  Plaintiff suffers from a diagnosed mental condition which, prior to June of 2007, had resulted in hospitalization on approximately twelve prior occasions in Binghamton and Oneonta, New York, as well as in North Carolina.

On June 18, 2007, plaintiff was approached in the mens' locker room of the Norwich, New York YMCA by Norwich Police Officers Tim Annesi and James Samulson.  At the time, Shonowsky was wearing only a bathing suit.  The two officers informed the plaintiff that they were there pursuant to a doctor's orders for the purpose of taking him into custody and transporting him to a psychiatric facility for evaluation and treatment. An altercation ensued, during which plaintiff sustained injuries near his eye requiring stitches.[2]

Following the initial encounter the defendant officers took plaintiff to

---

[1]    The following constitute my findings of fact based upon the evidentiary hearing conducted at the direction of Senior District Judge Thomas J. McAvoy.

[2]    A report concerning the incident reflects that plaintiff struck at least one of the officers during the encounter, leading to a struggle during which Shonowsky sustained a laceration below his right eye.

Chenango Memorial Hospital, still clad only in his bathing suit, where he remained for between a period of between thirty and forty-five minutes while his eye was stitched.  Plaintiff was then transported to the Binghamton General Hospital, a facility operated by United Health Services Hospitals in Binghamton, New York, where on June 18, 2007 he was involuntarily admitted pursuant to New York Mental Hygiene Law ("MHL") § 9.39.[3]

When admitted to Binghamton General Hospital, still only wearing his bathing suit, plaintiff had no money.  He was placed in a locked ward, and on June 19, 2007 was provided with a document entitled "Notice of Status and Rights-Emergency Admission."  That document informed

---

[3]   That section authorizes emergency admission of "any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others." N.Y. Mental Hyg. Law § 9.39(a).  The term "likelihood to result in serious harm" is defined in that section to mean:

1.   substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or

2.   a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

*Id.*  As Judge McAvoy noted in his decision, in contrast to MHL § 9.27 emergency admission under section 9.39 does not require a finding that the person is unable to care for himself or otherwise function in society.  *See* Dkt. No. 13, at p. 5, n. 7.

Shonowsky of his right to a court hearing, to be represented by a lawyer, to seek an independent medical opinion, and to communicate in writing or by telephone to the Mental Hygiene Legal Service, and a telephone number for that agency was provided on the notice.

According to plaintiff's treating physician, Dr. Juan Marte, plaintiff requested consultation with counsel.[4]  Dr. Marte was uncertain whether plaintiff was contacted by an attorney from Mental Hygiene Legal Service, although he stated that the customary practice at the facility is that once such a request is made the patient must be seen by a lawyer, and staff members are instructed to advise a doctor if a consultation does not occur.

During the time of his confinement the plaintiff was kept in a locked ward.  The ward contains two telephones – a payphone and a telephone at the nurse's station that patients without coins to make calls are permitted to use.  While in the facility plaintiff had access to a telephone, including for purposes of calling an attorney.  Plaintiff's ability to make telephone calls is confirmed by the fact that, according to Dr. Marte,

_____

[4]     A June 20, 2007 entry on plaintiff's records notes that he requested to speak with Mental Health Legal Services.

plaintiff was overheard speaking to his mother by telephone on January 19, 2007, the day after his admission.[5]

Plaintiff's commitment was based upon a report that he had threatened his mother and brother at home, and was uncooperative. According to Dr. Marte, the condition requiring plaintiff's hospitalization was due to his having voluntarily discontinued the use of his psychiatric medication.  Plaintiff was detained in the psychiatric facility until June 29, 2007.  Upon his discharge plaintiff was provided with an appointment to be seen by professionals at Chenango County Mental Health on July 6, 2007 and was directed to keep appointments and take all prescribed medications.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on June 24, 2010.  Dkt. No. 1. Plaintiff's complaint names the City of Norwich and Norwich City Police Offices Tim Annesi and James Samulson as defendants, and asserts claims pursuant to 42 U.S.C. § 1983 against all three defendants, a negligence cause of action against the two police officers, and a claim for

---

[5]    Plaintiff's medical records show that he spoke with his mother on June 19, 2007 by telephone, noting that he did so in a loud tone and appeared to be angry. Plaintiff's mother later came to visit him, although he did not speak with his mother at that time.

vicarious liability and indemnification against the City of Norwich.

In response to plaintiff's complaint, on September 14, 2010 defendants moved seeking its dismissal, arguing that the plaintiff's claims are precluded by the applicable statutes of limitations.  In opposing that motion plaintiff conceded the untimeliness of his state law claims, but argued his entitlement to tolling of the statute of limitations pursuant to New York Civil Practice Law and Rules ("CPLR") § 208 for purposes of his section 1983 cause of action for the ten-day period during which he was involuntarily committed for psychiatric evaluation and treatment.  Dkt. No. 7.

On November 4, 2010, Senior District Judge McAvoy issued a decision and order in which he directed dismissal of plaintiff's pendent state law claims and referred the matter to me for the purpose of conducting an evidentiary hearing to "address whether Plaintiff was insane within the meaning of [CPLR] § 208 upon his admission on June 18, 2007 and, if so,  how long any such period of insanity persisted."  Dkt. No. 13 at p. 6.  Following a series of adjournments for various reasons, all at the request of the parties, the contemplated evidentiary hearing was conducted on February 25, 2011.  The sole witness testifying at the

hearing was the plaintiff, although the court received as exhibits – on agreement of the parties – the deposition testimony of Dr. Juan Marte, Shonowsky's treating psychiatrist during his hospitalization, as well as plaintiff's medical records.   At the close of the hearing, the parties were afforded an opportunity to submit proposed findings, which have since been received by the court.  Dkt. Nos. 21 and 22.

III.   DISCUSSION

The statute of limitations applicable to claims under 42 U.S.C. § 1983 is derived from the general or residual statute of limitations for personal injury actions under the laws of the forum state.  *See Owens v. Okure*, 488 U.S. 235, 249-50, 109 S. Ct. 573, 583 (1989).  In this instance plaintiff's federal claim is governed by the three-year statute of limitations applicable in New York to personal injury claims of an otherwise unspecified nature.  *See* N.Y.C.P.L.R. § 214(5); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quoting *Owens*); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995); *Lugo v. Senkowski*, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000) (Kahn, J.) (citing *Pinaud* and *Owens*).

Accrual of plaintiff's section 1983 claims is controlled by federal law. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007); *Singleton v. City of*

*New York,* 632 F.2d 185, 191-92 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S. Ct. 1368 (1981). Such a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Singleton*, 632 F.2d at 191 (citation and quotation marks omitted). In this instance, it seems clear that plaintiff's false arrest and excessive force claims accrued on June 18, 2007, the date of his arrest and the commencement of his involuntary commitment. *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("A cause of action for false arrest accrues at the time of detention . . .."); *Merrihew v. Town of Ulster*, No. 1:04-CV-1027, 2005 WL 1660113, at * 2 (N.D.N.Y. Jul. 7, 2005) (Kahn, J.) ("A claim pursuant to § 1983 'accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm.'") (quoting *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994)). It is somewhat less clear when accrual of his due process cause of action occurred. This action was filed on June 24, 2010. Accordingly, at a minimum plaintiff's false arrest and excessive force claims under section 1983 are time-barred absent the applicability of one or more tolling provisions.[6]

---

[6]     Plaintiff's counsel explains that he filed this action on that date based upon a representation from Shonowsky that the date of his arrest was June 29, 2007

Plaintiff now requests that the court invoke the tolling provision of CPLR § 208, under which an applicable statute of limitations may be tolled for individuals suffering from "insanity at the time the cause of action accrues."  N.Y.C.P.L.R. § 208.[7]  That tolling provision is applicable to plaintiff's federal claims provided that it is not inconsistent with the federal policy underlying section 1983 which, in this instance, does not appear to be the case.  *Keitt v. City of New York*, No. 09 Civ 5663 (PKC)(DF), 2010 WL 3466175, at *7 (S.D.N.Y. Aug. 9, 2010).  Plaintiff bears the burden of establishing the applicability of section 208.  *Id.; see also Doe v. Holy See*, 17 A.D.3d 793, 794, 793 N.Y.S.2d 565 (3d Dep't 2005).

As construed by the New York courts, section 208 has been subject to a narrow interpretation.  *Keitt,* 2010 WL 3466175, at *7; *see also*

---

"for sure."  *See* Plaintiff's Memorandum (Dkt. No. 22) at p. 3 (unnumbered).

[7]   That section provides, in relevant in part, as follows:

> If a person entitled to commence an action is under
> a disability because of infancy of insanity at the time the
> cause of action accrues, and the time otherwise limited
> for commencing the action is three years or more and
> expires no later than three years after the disability ceases,
> ...the time within which the action must be commenced
> shall be extended to three years after the disability ceases
> ....

N.Y.C.P.L.R. § 208.

*Luciano v. City of New York*, 684 F. Supp.2d 417, 420 (S.D.N.Y. 2010); *Vallen v. Carrol*, No. 02 Civ. 5666, 2005 WL 2296620, at * 3 (S.D.N.Y. Sept. 20, 2005).  The New York Court of Appeals has observed that "the Legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society.*"  McCarthy v. Volkswagen of Am.*, 55 N.Y.2d 543, 548, 450 N.Y.S.2d 457(1982).

To qualify for the benefit of section 208 a plaintiff must demonstrate an inability to function in society persisting continuously during the relevant tolling period.  *Keitt*, 2010 WL 3466175, at *7; *Harrison v. Lutheran Med. Ctr.*, No. 05-CV-2059, 2007 WL 3023830, at *5 (E.D.N.Y. Oct. 12, 2007); *Dumas v. Agency for Child Dev.*, 569 F. Supp. 831, 833 (S.D.N.Y. 1983).  Section 208 applies only during a period of "continuous disability", meaning that any lucid interval of significant duration during the course of the period in dispute ends eligibility for the provision's tolling. *Basher v. Madonna Realty Corp.*, No. 01-CV-5116, 2007 WL 174130, at *3 (E.D.N.Y. Jan. 19, 2007) (citing *Carter v. Doe*, No. 05 Civ 8432, 2006 WL 2109461, at *3 (S.D.N.Y. Jul. 26, 2006)).

Looking to *McCarthy* for guidance, courts applying section 208 have

universally demanded a showing of an extremely high level of incapacity to qualify for tolling under its provisions.  *Keitt*, 2010 WL 3466175, at *7; *see also Reyes v. City of New York*, No. 00 CIV. 1050, 2000 WL 1505983, at *6 (S.D.N.Y. Oct. 6, 2000) (no section 208 toll where plaintiff diagnosed with post-traumatic stress disorder as a result of separate gunshot and knife injuries); *Wenzel v. Nassau County Police Dep't*, CV-93-4888, 1995 WL 836054, at *2 (E.D.N.Y. Feb. 14, 1996) (no section 208 tolling where plaintiff suffered from "bouts of depression, apathy, and anxiety."), *adopted by*, 914 F. Supp. 902 (E.D.N.Y.1996).  *But see Barnes v. County of Onondaga*, 65 N.Y.2d 664, 666 (1985) (C.P.L.R. 208 tolling allowed where medical testimony was uncontradicted and described the plaintiff as suffering from "a major depressive disorder" and "a very serious depressive reaction," which resulted in an overall inability to function in society).  As one court has noted, considering potential applicability of section 208 to a case brought by a plaintiff who, like Shonowsky, was involuntarily committed under section 9.39,

> [t]he condition of an individual's mental capabilities is largely a factual question. . . and the surrounding circumstances relevant to the claimant's ability to safeguard his or her rights must be scrutinized. . ..

*Hoops v. Director*, *Bellevue Hosp. Ctr.,* 28 Misc.3d 61, 63, 906 N.Y.S.2d

674 (1st Dep't 2010) (citation omitted).

The fact of plaintiff's psychiatric hospitalization does not entitle him to a *per se* tolling of the governing statute of limitations under section 208. *Joseph S. v. Hogan,* 561 F. Supp.2d 280, 315 (E.D.N.Y. 2008).  Instead, the court must look beyond the mere fact that his psychiatric admission to its surrounding circumstances and his ability, given the commitment, to protect his legal rights based upon the extent of his ability to function in society.  *Basher*, 2007 WL 174130 at *3 (citing *Cerami v. City of Rochester School Dist.*, 82 N.Y.2d 809, 812 (1993)).

The evidence now before the court is at best equivocal concerning plaintiff's condition during the period of his hospitalization.  Unfortunately, the evidence adduced during the recent hearing was not significantly enlightening concerning the question of Shonowsky's ability to function as a result of a severe and incapacitating disability and to protect his legal rights, providing little insight regarding plaintiff's mental condition during the relevant time beyond his medical records which were before the court when Judge McAvoy rendered his decision.

At the time of his admission, Shonowsky exhibited signs of grandiosity, tangential thinking, and flight of ideas.  Plaintiff was also

described as manic when evaluated.  Dr. Marte explained mania as being associated with sustained anxiety, sustained energy, rapid thinking, grandiosity, and poor sleep patterns.  Dr. Marte also noted that a manic patient can be hypersexual and can make dangerous and risky decisions.[8] Dr. Marte testified that based upon plaintiff's symptoms and reports of threats to family members he felt that the plaintiff was a potential danger to himself and others when admitted.

Following his arrival at the Binghamton General Hospital plaintiff was sedated using Seroquel and was not permitted to leave his ward. Plaintiff was also prescribed several other medications, including Depakote – which he has taken for several years – as well as Zocor and Vasotec, in order to control hypertriglyceridemia and high blood pressure, and Ambien for insomnia based upon complaints of having difficulty

_____

[8]     Dr. Marte defined tangentiality as "meaning that the person will not remain within the topic. Basically, they're asked something, a specific question, and they will basically erase the question and they will go on and talk about unrelated topics. . .."  Dr. Marte described "grandiosity" to mean making remarks that do not necessarily equate with reality.

sleeping.[9],[10]  On June 19, 2007, a Violence Risk Assessment was conducted.  After considering various risk factors, the health care provider completing the form assigned a score of sixteen, placing the plaintiff in the low risk category for violence.

Following his admission to the Binghamton General Hospital, plaintiff underwent an emergency psychiatric evaluation, and a report of that evaluation, dated June 20, 2007, was generated.  The evaluation recounts plaintiff's versions of the incidents leading to his commitment and indicates that he presented at the emergency room as "angry, agitated and grandiose," repeatedly stating his intention to sue the Norwich police,

---

[9]     Plaintiff's prescription for Seroquel was discontinued on or about June 26, 2007, when he was placed instead on Geodon, which seemed to provide greater improvement in his mental condition.  Dr. Marte describes both medications as mood stabilizers.

[10]     During the period of his hospitalization plaintiff experienced difficulty in sleeping.  Plaintiff's medical records record the following amounts of sleep on the corresponding dates reflected:

| Dates | Hours of Sleep |
| --- | --- |
| June 20, 2007 | 8.0 |
| June 21, 2007 | 3.5 |
| June 22, 2007 | 0 |
| June 23, 2007 | 4.0 |
| June 24, 2007 | 3.5 |
| June 25, 2007 | 0 |
| June 26, 2007 | 3.0 |
| June 27, 2007 | 4.0 |
| June 28, 2007 | 6.0 |
| June 29, 2007 | 5.5 |

the hospital, and everyone involved in the June 18, 2007 incident.  During

the evaluation leading to that assessment, according to Dr. Marte, plaintiff

was able to provide a cogent account of his family history and was alert

and oriented times three, with an attitude that was appropriate and

cooperative.  The following entry regarding plaintiff's mental status

appears in that assessment form:

> The patient is a 52-year-old Caucasian male
> awake, alert, oriented x3.  He appears somewhat
> grandiose and having a somewhat increased
> psychomotor activity.  His speech is marginally
> increased in rate and slightly pressured.  He is
> cooperative with interviewer.  Mood is euphoric.
> His affect is congruent to the mood.  The patient is
> having some circumstantiality, flight of ideas and
> he is somewhat tangential at times.  He denies any
> racing thoughts, no loosening of association.  No
> thought blocking.  The patient denies any
> psychosis at the present time.  Attention,
> concentration, memory are grossly fair.  Insight
> and judgment are guarded.

Based upon his assessment Dr. Marte diagnosed the plaintiff as suffering

from bipolar disorder mixed, and assigned a global assessment of

functioning ("GAF") score of thirty-five.[11]

---

[11]     The GAF score assists in evaluating a patient's overall functioning, taking
into account psychological, social, and occupational function.  DIAGNOSTIC AND
STATISTICAL MANUAL OF MENTAL DISORDER 32 (4th ed. text rev. 2000) ("DSM-IV-TR").  A
GAF of thirty-five signifies "[s]ome impairment in reality testing or communication. . .
OR major impairment in several areas, such as work, school, family relations,

Plaintiff's medical records reveal that later, on June 20, 2007 at 2:00 p.m., he was alert and oriented times four, meaning that he was able to react to date, time, place, and personal situation.  A note from that time also describes plaintiff as cooperative, though with a slight irritable edge, and medication compliant.

During the course of his psychiatric hospitalization plaintiff demonstrated an awareness of his circumstances, including those surrounding the events leading up to his having been taken into custody. Shonowsky informed Dr. Marte at the outset of his hospitalization of his intention to sue as a result of incident involving the Norwich City police officers and arranged to have photographs of his injuries taken on June 20, 2007 for potential use in connection with that suit.

Plaintiff's medical records include daily progress notes that were generated, beginning on June 19, 2007 and extending through June 28, 2007, the day before his discharge.   A June 21, 2007 progress note reflects no change of plaintiff's diagnosis from the time of admission and records uncontrolled symptoms of mania. That progress note also reflects that plaintiff appeared to be calm, smiled appropriately, and related

---

judgment, thinking, or mood. . . ." *Id.* at 34.

appropriately to people at that juncture, and his mood was characterized as "euphoric."  A later progress note from June 22, 2007 shows that plaintiff demanded to be discharged from the hospital.  That note also indicates, however, that plaintiff was oriented to person, place, situation, and time, his thought content was within normal limits, and his mood was described as euphoric.  Plaintiff's Depakote prescription dosage was increased, and he was further detained for treatment.

A daily report dated June 25, 2007 reflects that plaintiff was becoming angry, grandiose, and dismissive, and continued to discuss his contemplated lawsuit.  The report shows that plaintiff displayed uncontrolled symptoms of mania and anger.  A progress note from the next day again describes plaintiff as being angry, with poor insight, and uncontrolled symptoms of mania, but reflects that he was oriented to person, place, situation, and time.[12]

As a result of his ongoing irritability, plaintiff was increasingly sedated, including through Seroquel, an anti-psychotic drug utilized by Dr.

_____

[12]    It appears that plaintiff's anger and frustration over not being released grew over the days leading to his discharge and resulted, among other things, in his smashing a jelly packet on a table in a fit of anger on June 26, 2007 and refusing to clean up the resulting mess.

Marte and others at the facility as a mood stabilizer for mania.  The use of Seroquel was discontinued on June 26, 2007, and plaintiff was instead placed on Geodon, 40 milligrams twice daily.

Dr. Marte did not observe any significant change in plaintiff's condition from that point through June 27, 2007.  On June 28, 2007, however, it was noted that plaintiff appeared more calm and talkative, with fair impulse control and no residual side effects.

Each of the daily progress notes prepared with respect to the plaintiff up through June 26, 2007, noted that he demonstrated "[s]evere impairment in insight/judgment leading patient to make unsafe decisions related to daily living."  Each of those progress notes also indicated, as potential barriers to plaintiff's discharge, his inability to care for himself and the fact that a safe discharge plan was not yet in place. The progress note from June 27, 2007 eliminated the comment regarding plaintiff's insight and judgment, but persisted in observing the perceived barriers to discharge.

Shonowsky was discharged from the hospital on June 29, 2007.  At the time of his discharge, plaintiff's mental health care providers determined that he was not a danger to himself or others and could

function within the community.  Plaintiff's discharge summary reflects an

Axis 1 diagnosis of bipolar disorder, mixed, references a long history of

mental illness, and places plaintiff's GAF at 58-60.[13]

It appears from plaintiff's hearing testimony and submissions that

any claimed inability to function and communicate with those outside of

his hospital environment during the time of his hospitalization was not the

direct result of his mental condition, but instead a barrier allegedly

imposed by his circumstances upon his ability to communicate with those

outside the facility, including counsel.  Such limitations are not sufficient to

invoke tolling under section 208.[14]  *See de los Santos v. Fingerson*, No.

97 CIV. 3972(MBM), 1998 WL 74051, at * 4 (S.D.N.Y. Oct. 23, 1998)

("[L]ower courts have stressed that the over-all inability to function must

be "actually attributable to a mental, rather than a physical condition in

order to serve as a predicate for tolling.") (citations omitted).  Moreover,

even if lack of access to any means of communication could suffice to

support tolling under section 208, the record fails to support his claim in

---

[13]     A person with a GAF of 58-60 exhibits "[m]oderate symptoms . . .  OR moderate difficulty in social, occupation, or school functioning. . .."  DSM-IV-TR 34.

[14]     If the defendants were responsible for plaintiff's inability to communicate, that fact would provide a basis to estop them from asserting a statute of limitations defense.  *St. John's University v. Bolton*, 2010 WL 5093347, at *41 n.24 (E.D.N.Y. Dec. 10, 2010).  That does not appear to be the case in this instance, however.

this regard.  It appears clear that plaintiff failed to take advantage of available opportunities to communicate with the outside world, including through the Mental Hygiene Legal Service as indicated in the written notice which he received on June 19, 2007, when his mother came to visit, and by utilizing the office telephone that was available to him.

It is true that upon his admission into the Binghamton General Hospital plaintiff was diagnosed as having bipolar disorder and as manic. Such a diagnosis, however, does not alone qualify Shonowsky for relief provided under section 208.  *Basher,* 2007 WL 174130, at *3*; see also Mulkern v. New York State Police,* No. 08 Civ. 8870 (HB) (LMS), 2010 WL 5584598, at *3 (S.D.N.Y. Dec. 8, 2010) (citing, *inter alia, Wenzel v. Nassau County Police Dep't,* No. CV-93-4888, 1995 WL 836056, at *4 (E.D.N.Y. Aug. 5, 1995)).  Instead, to qualify for tolling under section 208 a plaintiff must establish a total inability to protect his or her legal rights due to an inability to function in society.  *Id.; see also Swartz v. Berkshire Life Ins. Co.*, No. 99 Civ 9462, 2000 WL 1448627, at * 5 (S.D.N.Y. Sept. 28, 2000) ("Difficulty in functioning is not sufficient to establish insanity for the purposes of § 208; rather, the plaintiff must be totally unable to function as a result of a 'severe and incapacitating' disability.") (citation

omitted).  The record in this case fails to support such a finding.

One factor that the courts have found significant when addressing the applicability of tolling under section 208 is whether, and if so to what extent, a plaintiff has taken measures to protect his or her rights during the period at issue.  *Basher*, 2007 WL 174130, at *4 (citing *McCarthy*, 55 N.Y.2d at 548).  In this instance, the plaintiff's medical records reveal that upon being advised of his right to consult with an attorney concerning his circumstances, he requested such a consultation.  The record also reflects plaintiff's manifest intention from the outset to bring suit based upon the circumstances surrounding his arrest and involuntary commitment, and that to further that intention he made arrangements two days after his admission to have photographs taken of his injuries.  These actions suggest plaintiff's ability to protect his legal rights notwithstanding his mental condition and involuntary commitment and therefore militate against the applicability of section 208.  *Carmichael v. Hobbs*, No. 07-CV-2022, 2010 WL 3925198, at * 2 (E.D.N.Y. Oct. 1, 2010); *see also Basher*, 2007 WL 174130, at *6 (the filing of lawsuits while allegedly incapacitated found to demonstrate some ability to protect legal rights).

In sum, because plaintiff has failed to establish that during the time

of his involuntary commitment he was totally unable to function as a result of a severe and incapacitating disability, I recommend a finding that plaintiff was not insane within the meaning of CPLR § 208 at any time between June 18, 2007 and June 29, 2009 and is therefore ineligible for tolling under that provision.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

While it is uncontroverted that plaintiff was involuntarily committed for psychiatric evaluation and treatment during the relevant time period, he has failed to establish that while committed he was unable to function in society as a result of the severe mental condition that persisted continuously during the period of his confinement.  Instead, the evidence adduced reflects that plaintiff was at least minimally able to function during that time period and that any inability to communicate was result of circumstances other than those arising directly out of his medical condition.  Accordingly, it is therefore hereby respectfully

RECOMMENDED, that the court find plaintiff is not entitled to the benefit of tolling under CPLR § 208 during the period of this psychiatric treatment at the Binghamton General Hospital.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      April 18, 2011
            Syracuse, NY